UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAEWOO LEE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEAMEX CORP., INFIGO LLC dba INFIGO EV SOLUTIONS, SEAN KIM, MICHAEL CHOI, DANNY CHOI, and FELIX SONG,<br><br>Defendants, | Index No. 25-cv-1156<br><br>**COMPLAINT** |

Plaintiff Jaewoo Lee ("Plaintiff"), on behalf of himself and all others similarly situated (collectively "Plaintiffs"), by and through his undersigned counsel, as and for his Complaint in this action against Teamex Corp. (defendant "Teamex"), Infigo LLC (defendant "Infigo"), Sean Kim, Michael Choi, Danny Choi, and Felix Song (collectively "Defendants"), alleges as follows:

## I.   Nature of the Action

1. Plaintiff Jaewoo Lee, individually and on behalf of all other similarly situated current or former employees, brings this action against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA" – 42 U.S.C. § 201 *et seq*), arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and practices.

2. Plaintiff Jaewoo Lee individually brings this action against Defendants for alleged violations of New Jersey Wage and Hour Law ("NJWHL") and New Jersey Conscientious Employee Protection Act ("NJ CEPA") arising from Defendants' various willful, malicious, and unlawful employment policies, patterns, and practices.

1

3. Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA, NJWHL, and NJ CEPA against Plaintiff and/or other similarly situated by (1) failing to pay their applicable minimum wages, (2) failing to pay their overtime compensation and (3) engaging in unlawful retaliation and wrongful termination.

4. Specifically, Plaintiff brings this action as a collective action on behalf of himself and similarly situated employees who elect to opt-in to this action pursuant to the FLSA, and specifically the collective action provisions of 29 U.S.C. § 216(b), to remedy Defendants' multiple FLSA violations that have deprived Plaintiff and all other similarly situated employees of their lawfully earned wages.

5. Plaintiff brings this action individually against Defendants for alleged violations of the FLSA, specifically for unlawful retaliation and to recover damages resulting from wrongful termination.

6. Plaintiff also brings this action individually against Defendants for alleged violations of the NJWHL and the NJ CEPA, specifically to recover unpaid minimum wages, overtime compensation, and damages resulting from unlawful retaliation and wrongful termination.

## II.   Jurisdiction and Venue

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 as this action involves federal questions regarding the deprivation of Plaintiff's rights under FLSA. The Court has supplemental jurisdiction over Plaintiff's related State law claims pursuant to 28 U.S.C. § 1367(a).

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

### III. Parties

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Defendant Teamex is a company based in New Jersey specializing in Electronic Vehicle ("EV") charger distribution, and factory warranty services for EV charging stations.

11. Defendant Infigo is also a New Jersey-based company focused on the operation and maintenance of EV charging stations, offering services like remote monitoring, troubleshooting, and fleet electric support.

12. Both Teamex and Infigo serve as subcontractors for SK Signet, heavily involved in the upkeep and repair of designated EV charging stations.

13. One of the core services offered by Teamex and Infigo is dispatching field service technicians to various states to address and resolve maintenance issues at on-site EV charging stations.

14. Defendants' coverage extends to multiple states, including but not limited to New Jersey, New York, Pennsylvania, and New Hampshire.

15. Both Teamex and Infigo have their principal places of business at 3 Sperry Rd, Fairfield, NJ 07004.

16. Defendant Sean Kim (defendant "Sean") is the president and Chief Executive Officer ("CEO") of Teamex and Infigo.

17. Defendants Michael Choi ("Michael"), Felix Song ("Felix"), and Danny Choi ("Danny") serve as Vice Presidents of Teamex and Infigo. They hold the respective positions of Chief Technology Officer ("CTO"), Chief Service Operations Officer ("CSO"), and Chief Management Officer ("CMO").

18. Plaintiff's employment period was from February 5, 2024, to January 24, 2025 (the "liability period").

19. During the liability period, Plaintiff worked as a field service technician for Defendants.

20. Defendants hired Plaintiff as their field service technician to be dispatched to multiple EV charging stations across multiple states.

21. Defendants had the authority to fire Plaintiff during the liability period.

22. Defendants had the authority to supervise Plaintiff during the liability period.

23. Defendants had the authority to demote or promote Plaintiff during the liability period.

24. Defendants had the authority to discipline Plaintiff during the liability period.

25. Defendants had the authority to determine pay rates for Plaintiff during the liability period.

26. Defendants paid Plaintiff during the liability period.

27. Defendants had the authority to control the terms and conditions of Plaintiff's employment during the liability period.

28. Plaintiff reported his works to Sean, Michael, Danny, and Felix (hereinafter "individual defendants") during the liability period.

29. During the relevant times, all other employees similarly situated to Plaintiff worked as field service technicians for Defendants.

30. Defendants hired all other employees similarly situated to Plaintiff as field service technicians, dispatching them to multiple EV charging stations across various states.

31. Defendants had the authority to fire all other field service technicians during the relevant time period.

32. Defendants had the authority to supervise all other field service technicians during the relevant time period.

33. Defendants had the authority to demote or promote all other field service technicians during the relevant time period.

34. Defendants had the authority to discipline all other field service technicians during the relevant time period.

35. Defendants had the authority to determine pay rates for all other field service technicians during the relevant time period.

36. Defendants paid all other field service technicians during the relevant time period.

37. Defendants had the authority to control the terms and conditions of all other field service technicians' employments during the relevant time period.

38. Plaintiff reported his works to Sean, Michael, Danny, and Felix (hereinafter "individual defendants") during the liability period.

39. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein the course and scope of their employment with and for the benefits of Defendants

40. All Defendants are jointly and severally liable for their multiple violations of the FLSA, NJWHL, and NJ CEPA.

## IV.   Collective Action Allegation

41. Plaintiff brings Count I and Count II below, alleging FLSA violations, on behalf of himself and all similarly situated non-exempt employees (i.e. Field Service Technicians) who work or have worked at Teamex and Infigo within three years of the date of the filing of this action and who elect to opt-in to this action (the "FLSA Collective").

42. Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid minimum wages for all hours they worked and/or premium overtime compensation for all hours they worked beyond 40 hours per workweek.

43. There are likely numerous similarly situated current and former employees of Defendants in the positions of the FLSA Collective who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.

44. Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records that they are required to create and maintain under applicable federal and state law. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## V.   Factual Allegations

45. As a field service technician during the liability period, the primary duties of Plaintiff and the FLSA Collective included but were not limited to:

   (a) Traveling to on-site EV charging stations as directed by Defendants;

   (b) Resolving issues at the EV charging stations upon arrival;

   (c) Simultaneously coordinating with the support team while addressing the issues on-site; and

   (d) Returning to headquarters upon completing each assignment.

46. During the relevant time period, Plaintiff and the FLSA Collective commuted to Defendants' headquarters and his workday began at Defendants' headquarters located at 3 Sparry Road, Fairfield, NJ 07004.

47. Upon arrival at headquarters, Plaintiff and the FLSA Collective were required to follow daily instructions provided by Defendants' dispatchers, directing him to specific EV charging stations.

48. Plaintiff and the FLSA Collective were required to drive company-owned vehicles to travel from headquarters to the assigned EV charging stations.

49. Plaintiff and the FLSA Collective were required to return to the headquarters and park the company-owned vehicles there after completing on-site jobs at EV charging stations.

50. During the relevant time period, Plaintiff and the FLSA Collective regularly worked five days per week, Monday through Friday.

51. Depending on the location of the EV charging station, Plaintiff and the FLSA Collective sometimes spent 6.5 to 7 hours traveling between the designated station and headquarters, covering a radius of 150 to 200 miles from the headquarters.

52. Specifically, Plaintiff and the FLSA Collective drove to locations as far as Pittsburgh, Pennsylvania; Niagara Falls, New York; and various sites in New Hampshire.

53. As a result, Plaintiff and the FLSA Collective routinely worked more than forty (40) hours per week during the relevant time period.

54. Starting from August 1, 2024, Defendants implemented a new compensation policy under which the pay for field service technicians, including Plaintiff and the FLSA Collective, was calculated based solely on the distance between the EV charging station and Defendants' headquarter, rather than the actual time worked and/or spent.

55. From August 2024 onward, Defendants did not compensate Plaintiff and the FLSA Collective for their actual hours worked. Instead, Defendants asserted that compensation for

Plaintiff and the FLSA Collective were determined exclusively by the total miles traveled, irrespective of the actual driving time incurred.

56. Under this policy, Defendants compensated Plaintiff and the FLSA Collective for driving time using a flat hourly rate, calculated as one hour for every 45 miles traveled. This calculation was based solely on the distance between headquarters and the assigned EV charging station, disregarding actual driving conditions or time spent in transit.

57. This calculation method failed to account for the actual hours Plaintiff and the FLSA Collective spent driving to and from assigned EV charging stations, resulting in under-compensation for the time they actually worked.

58. In addition to the driving policy, Defendants maintained a fixed compensation structure for Field Service Technicians' on-site work throughout the liability period.

59. Specifically, Defendants compensated Field Service Technicians, including Plaintiff and the FLSA Collective, using predetermined flat rates for various tasks and assignments, without considering the actual time required to complete them.

60. For example, Defendants set the 'standard work hours' for certain jobs including but not limited to:

    (a) 1.5 compensable work hours for "DP Mainboard Verification/Replacement"

    (b) 0.8 compensable work hours for "UIC Verification"

    (c) 1.5 compensable work hours for "NAYAX Verification/Replacement"

    (d) 5.5 compensable work hours for "CCS Cable Detection Failure"

    (e) And various other tasks with predetermined compensable hours.

61. This 'standard work hours' compensation policy regularly failed to account for the actual hours worked by Plaintiff and the FLSA Collective.

62. Defendants unilaterally implemented their new compensation policies, claiming they were derived from their accumulated business experience over the years.

63. In addition to being subjected to mileage-based driving compensation and flat-rate task payments, Plaintiff and the FLSA Collective were denied proper lunch breaks during their employment, as they were required to remain available to respond to calls from EV charging stations, Defendants' support teams in the Philippines, and Defendants' dispatchers.

64. Despite Plaintiff and the FLSA Collective not being able to take uninterrupted lunch breaks, Defendants deducted one hour from their daily work hours, claiming they were provided with a full one-hour lunch break.

65. As a result, the combination of (1) the mileage-based driving compensation, (2) flat-rate task payments and (3) the wrongful deduction of a one-hour lunch break that was not truly provided deprived Plaintiff and the FLSA Collective of their lawful wages for the actual hours worked, including both minimum wage and overtime compensation.

66. Specifically, because of the unlawful compensation policies described above, Plaintiff and the FLSA Collective were compensated for fewer hours than they actually worked.

67. Consequently, Defendants (1) failed to pay at least the applicable minimum wage for the improperly deducted hours and (2) failed to pay overtime compensation when Plaintiff and the FLSA Collective routinely worked more than forty (40) hours per week.

68. Plaintiff's agreed hourly rate with Defendants was $36.80 per hour.

69. Defendants operated a back office in the Philippines and often brought workers from the Philippines to Defendants' headquarters in the U.S. under the guise of "training" using ESTA visas.

70. Upon arrival to the US, these workers from the Philippines were instructed to perform the same tasks as Plaintiff and/or Field Service Technicians already employed by Defendants.

71. Workers from the Philippines were compensated $50 per day.

72. Defendants paid these workers by directing other employees to withdraw cash and distribute it to them, in an effort to evade legal obligations such as tax and immigration compliance.

73. These workers from the Philippines refrained from raising concerns with either the relevant authorities or Defendants because they feared they might face consequences.

74. Plaintiff complained to Defendants multiple times regarding his unpaid wages.

75. Plaintiff also raised concerns with Defendants about unlawful employment policies and practices within Defendants' workplace including the treatment and pay of workers from the Philippines.

76. Defendants did not address or resolve Plaintiff's multiple complaints.

77. Instead, Defendants assigned Plaintiff job duties outside the customary responsibilities of a Field Service Technician, including dispatching Plaintiff to handle appliance service issues, such as air conditioners and other household appliances.

78. As a result of this job assignment, Plaintiff was placed at a disadvantage compared to other Field Service Technicians in competing for promotions and salary increases, as the assigned duties negatively impacted Plaintiff's performance evaluation as a Field Service Technician.

79. Plaintiff again spoke up and complained about unfair job assignments, Defendants' unlawful employment practices, unpaid wages for himself and the FLSA Collective, and other unfair treatment in the workplace.

80. This time, however, Defendants retaliated by terminating Plaintiff's employment on January 24, 2025, in response to his repeated complaints.

## Count I
## Violation of the Fair Labor Standards Act – Minimum Wages
### (On behalf of Plaintiff and the FLSA Collective)

81. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

82. At all times relevant herein, Plaintiff and the FLSA Collective (i.e. Field Service Technicians) are or have been employees within the meaning of the FLSA.

83. At all times relevant herein, Defendants have been the employer of Plaintiff and members of the FLSA Collective, engaging in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

84. At all times relevant herein, Defendants engaged in over $500,000.00 in annual sales or business.

85. Defendants suffered and permitted Plaintiff and the FLSA Collective to work, and both Plaintiff and the FLSA Collective did, in fact, perform work for Defendants. However, Defendants failed to compensate them at least at the federal minimum wage rate for certain time worked.

86. At all times relevant herein, Plaintiff and the FLSA Collective were not exempt from the minimum wage provisions of the FLSA and were entitled to be compensated at least at the federal minimum wage rate.

87. Plaintiff and the FLSA Collective are entitled to recover unpaid overtime wages for up to three (3) years prior to Plaintiffs filing this lawsuit because Defendants' violation was willful.

## Count II

**Violation of the Fair Labor Standards Act – Overtime Pay**
(On behalf of Plaintiff and the FLSA Collective)

88. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

89. At all relevant times herein, Plaintiff and the FLSA Collective regularly worked in excess of forty (40) hours per workweek.

90. At all relevant times herein, Defendants knew or should have known that Plaintiff and the FLSA Collective regularly worked in excess of forty (40) hours per workweek.

91. Defendants failed to pay Plaintiff and the FLSA Collective proper overtime compensation for all of the hours worked in excess of forty (40) hours in each workweek as set forth in the FLSA, 29 U.S.C. § 207, *et. seq.*

92. At all relevant times herein, Plaintiff and the FLSA Collective were not exempt from the FLSA's overtime wage provisions and were entitled to compensation at a rate of at least one and one-half times the federal minimum wage for their overtime work.

93. Plaintiff and the FLSA Collective are entitled to recover unpaid overtime wages for up to three (3) years prior to Plaintiffs filing this lawsuit because Defendants' violation was willful.

**Count III**
**Violation of the Fair Labor Standards Act – Unlawful Retaliation**
(On behalf of Plaintiff)

94. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

95. During the liability period, Plaintiff engaged in protected activity by raising multiple complaints to Defendants regarding his unpaid wages.

96. Rather than addressing Plaintiff's complaints, Defendants unlawfully retaliated by (1) assigning Plaintiff unfavorable work duties and (2) terminating his employment in response to his wage claims.

97. Plaintiff would not have been assigned unfavorable work duties, which led to his ineligibility for promotion and other benefits, had he not raised his wage claims with Defendants.

98. Plaintiff would not have been terminated on January 24, 2025, had he not raised his wage claims to Defendants.

99. As a result of Defendants' willful, unlawful retaliatory conduct, Plaintiff is entitled to all available damages, including, but not limited to, lost wages, emotional distress damages, liquidated damages, punitive damages, attorneys' fees, and litigation costs, and interest.

### Count IV
### Violation of the New Jersey Wage and Hour Law – Minimum Wages
(On behalf of Plaintiff)

100. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

101. At all relevant times herein, Plaintiff was employed by Defendants within the meaning of NJWHL.

102. At all relevant times herein, Defendants have been employers of Plaintiff within the meaning of the NJWHL.

103. Defendants intentionally and willfully failed to pay and refused to pay Plaintiff minimum wages, in violation of New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.7, the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a, and the New Jersey Wage and Hour Regulations, N.J.A.C. § 12:56-1.2(a).

## Count V
### Violation of the New Jersey Wage and Hour Law – Overtime Pay
### (On behalf of Plaintiff)

104. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

105. At all relevant times herein, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiff at one and one-half times the hourly rate the Plaintiff.

106. Defendants' failure to pay Plaintiff his overtime pay violated the NJWHL.

107. Defendants' failure to pay Plaintiff was not in good faith.

## Count VI
### Violation of the New Jersey Wage and Hour Law – Unlawful Retaliation
### (On behalf of Plaintiff)

108. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

109. Plaintiff engaged in protected activities by raising multiple complaints to Defendants regarding his unpaid wages and improperly deducted hours.

110. Specifically, during the liability period, Plaintiff repeatedly complained about his unpaid wages and unfavorable job duties resulting from his prior wage complaints. His final complaint regarding these issues was made on January 23, 2025.

111. Defendants terminated Plaintiff on January 24, 2025, within 90 days of Plaintiff's last complaint regarding unpaid wages.

112. Had Plaintiff not raised complaints to Defendants about his unpaid wages during the liability period, Defendants would not have retaliated by terminating his employment.

113. As a result of Defendants' willful, unlawful retaliatory conduct, Plaintiff is entitled to all available damages under the New Jersey law, including, but not limited to, lost wages,

emotional distress damages, liquidated damages, punitive damages, attorneys' fees, and litigation costs, and interest.

### Count VII
### Violation of the New Jersey Conscientious Employee Protection Act– Unlawful Retaliation
### (On behalf of Plaintiff)

114. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

115. Plaintiff reasonably believed that Defendants' unlawful employment practices, including but not limited to: (1) mileage-based driving compensation, (2) flat-rate task payments, (3) the wrongful deduction of a one-hour lunch break, (4) the assignment of unfavorable job duties, and (5) other unfair treatments to him, the FLSA Collective, and other Filipino workers, violated the law.

116. Plaintiff objected to and raised complaints against Defendants' employment practices, believing that they (1) violated the law, (2) constituted criminal misconduct, particularly in relation to Filipino workers who were misclassified, and/or (3) were contrary to public policy.

117. Instead of engaging in a meaningful resolution, Defendants assigned unfavorable work duties to Plaintiff and ultimately terminated him on January 24, 2025.

118. Had he not raised his concerns about Defendants' multiple unlawful employment practices, Plaintiff (1) would not have been assigned unfavorable job duties or (2) would not have been terminated on January 24, 2025.

119. As a result of Defendants' willful, unlawful retaliatory conduct, Plaintiff is entitled to all available damages under the New Jersey Conscientious Employee Protection Act, including, but not limited to, lost wages, emotional distress damages, punitive damages, attorneys' fees, and litigation costs, and interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter an order providing that:

a. Designation of this action as a Collective Action on behalf of the FLSA Collective Plaintiffs and prompt issuance of a notice pursuant 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

b. Designation of Plaintiff Jaewoo Lee as the Representative of the FLSA Collective Plaintiffs;

c. A declaratory judgment that the practices complained of herein are unlawful under FLSA, NJWHL, and NJ CEPA;

d. An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

e. An award of unpaid wages due under FLSA and New Jersey Wage and Hour Law to Plaintiff plus compensatory and liquidated damages in the amount of two hundred percent (200%) thereafter under New Jersey Wage Theft Act;

f. An award of legal and equitable remedies available under the FLSA, NJWHL, and NJ CEPA, including, but not limited to, back pay, front pay, reinstatement, restoration of benefits and seniority, and compensatory and punitive damages in amounts to be determined at trial.

g. An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to comply with federal and state law regarding unpaid wages and wrongful termination.

h. An award of the costs and expenses of this action together with reasonable attorneys' and expert fees;

i. The cost and disbursements of this action;

j. An award of prejudgment and post-judgment fees;

k. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: February 11, 2025

    /s/ Ryan Kim
Ryan J. Kim

Ryan J. Kim, Esq.
Ryan Kim Law, P.C.
222 Bruce Reynolds Blvd. Suite 490
Fort Lee, NJ 07024
ryan@RyanKimLaw.com